**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COLUMBIA**

```
-------------------------------------------------x
Todd W. Smith                           :
10121 Captain Hickory Place             :
Great Falls, VA 22066,                  :
                                        :
                     Plaintiff,         :
          v.                            :      Civil Action No: _____
                                        :
Rubicon Advisors LLC                    :
1455 F St., N.W.                        :
Suite 400                               :
Washington, D.C. 20004,                 :
                                        :
                     Defendant.         :
                                        :
-------------------------------------------------x
```

<u>**COMPLAINT**</u>

Plaintiff Todd W. Smith, by and through his undersigned counsel, hereby makes this Complaint for damages against defendant Rubicon Advisors LLC ("Rubicon") and respectfully states as follows:

**NATURE OF THE ACTION**

1.      This action seeks to recover unpaid wages and benefits that Rubicon owes Mr. Smith for his services in 2015 and 2016. Mr. Smith worked for Rubicon as a lobbyist from 2011 to September 30, 2016. The owner of Rubicon, William Burke, recruited Mr. Smith to work for Rubicon by agreeing to pay Mr. Smith a base salary, retirement benefits, and additional compensation for attracting new clients to the firm. Although Rubicon paid Mr. Smith his base salary and additional compensation every year from 2011 to 2014, it refused to pay him additional compensation of $135,000 in 2015 and 2016. It paid him no retirement benefits for 2014,

2015 or 2016.  Mr. Smith made repeated requests that Rubicon pay the wages it owed him, but Mr. Burke stalled him, made and broke promises to pay, and eventually fired Mr. Smith rather than pay him what was owed.  After firing Mr. Smith, Rubicon interfered with Mr. Smith's efforts to continue to serve his clients and misled Mr. Smith's current and prospective clients by stating that Mr. Smith still worked at Rubicon.  Mr. Smith now seeks to recover the unpaid compensation, an order prohibiting Rubicon's interference with his current and prospective clients, and damages for Rubicon's efforts to interfere with his business prospects.

## PARTIES

2.     Plaintiff Todd W. Smith is a citizen of Virginia, where he has lived during all times relevant to this complaint.

3.     Defendant Rubicon is a lobbying firm that maintains its principal place of business at 1455 F St., N.W. in the District of Columbia.  Rubicon holds itself out as an LLC. From 2011 to September 30, 2016, Rubicon was Mr. Smith's "employer" within the meaning of the District of Columbia Wage Payment and Collection Act, D.C. Code 32-1301 *et seq.* (the "Wage Act").

## JURISDICTION AND VENUE

4.     The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.

5.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

6.      Beginning in 2010, William Burke began to recruit Todd W. Smith to work as a lobbyist at Rubicon.  Mr. Smith had worked on Capitol Hill for almost 14 years, served as Deputy Chief of Staff/Legislative Director and Chief of Staff during the time that then-Congressman (and now governor of Georgia) Nathan Deal was both Chairman and Ranking Member of the Energy and Commerce Subcommittee on Health.  Mr. Smith has broad legislative experience in areas of telecommunications and health.

7.      Mr. Smith negotiated with Mr. Burke in late 2010 and early 2011.  In December 2010, Mr. Burke proposed the terms of an agreement that Mr. Smith later accepted.  The agreement provided that Rubicon would pay Mr. Smith a base salary, plus health benefits and a retirement contribution of between $15,000 and $25,000 each year, depending on the year, and additional compensation calculated "at 50% of revenue for business we pitch together and 70% of revenue for business you bring in without our assistance."  Mr. Burke expressed his enthusiasm for having Mr. Smith join Rubicon.  Mr. Smith accepted the offer that Mr. Burke had made and began work at Rubicon in February, 2011.

8.      In 2011 and 2012, Mr. Smith worked as a lobbyist for Rubicon.  Rubicon paid him a base salary, retirement benefits of $25,000 each year, and additional compensation each year calculated by the revenue of clients he had attracted to the firm.

9.      During 2013, Mr. Smith, working with Mr. Burke, attracted Client A and Client B to hire Rubicon to provide lobbying services.  During 2013, Client A paid Rubicon $200,000 for lobbying services and Client B paid $40,000.  As Mr. Smith and Mr. Burke had jointly attracted the clients, Mr. Smith was entitled to receive as additional compensation a sum equal to 50% of

the revenue from Clients A and B.  For 2013, Rubicon paid Mr. Smith 50% of the revenue from

Clients A and B, that is, $120,000 as part of his compensation under its agreement with him, and

retirement benefits of $40,000.  Rubicon also paid a small amount of additional compensation

based on the revenue from another client whom Mr. Smith had attracted.

10.     During 2014, Clients A and B continued to retain Rubicon to provide lobbying

services.   Client A paid $240,000 for lobbying services, and Client B paid $120,000.   As

Mr. Smith and Mr. Burke had jointly attracted the clients, Mr. Smith was entitled to receive as

additional compensation the sum of 50% of the revenue from Clients A and B. For 2014, Rubi-

con paid Mr. Smith 50% of the revenue from Clients A and B, that is, $180,000 as part of his

compensation under its agreement with him.  Rubicon also paid Mr. Smith another $20,000 in

additional compensation.  Rubicon did not pay any retirement benefits for 2014 to Mr. Smith.

11.     During 2015, Clients A and B continued to retain Rubicon to provide lobbying

services.   Client A paid $60,000 for lobbying services, and Client B paid $120,000.   As

Mr. Smith and Mr. Burke had jointly attracted the clients, Mr. Smith was entitled to receive as

additional compensation the sum of 50% of the revenue from Clients A and B, that is, $90,000.

Rubicon paid no additional compensation to Mr. Smith for 2015, and did not pay any retirement

benefits.

12.     During 2016, Client B continued to retain Rubicon to provide lobbying services.

Client B paid $90,000 for lobbying services during the time that Mr. Smith was employed at

Rubicon.  Client A ended its relationship with Rubicon, and, on information and belief, did not

pay Rubicon for lobbying services during 2016.  As Mr. Smith and Mr. Burke had jointly attract-

ed the client, Mr. Smith was entitled to receive as additional compensation 50% of the revenue

from Client B during 2016, that is, $45,000.  Rubicon paid no additional compensation to Mr. Smith for 2016, and paid no retirement benefits.

13.      Rubicon promised to pay Mr. Smith a retirement benefit of "$15,000 and $25,000 each year."  Rubicon paid the benefits between 2011 and 2013, but paid no retirement benefits for Mr. Smith in 2014, 2015, or 2016.

<u>Mr. Smith Tries to Get Rubicon to Pay the Additional Compensation</u>

14.      Rubicon usually paid additional compensation at the end of the calendar year. When Rubicon failed to pay him at the end of 2015 the additional compensation of $90,000 owed for that year, Mr. Smith asked Mr. Burke to insure that Rubicon paid what it owed him.

15.      For example, on March 11, 2016, Mr. Smith asked Mr. Burke to discuss a resolution to the issues regarding his pay for the previous year.  Mr. Burke promised to have further discussions about the issues in the following week, but did not.  Mr. Smith again sought to resolve the matter with Mr. Burke, and Mr. Burke eventually told Mr. Smith that he would pay him $75,000 to satisfy his right to compensation for 2015.

16.      Mr. Burke never followed through on his promise to pay even the reduced amount of $75,000.  When Mr. Smith asked him about it on June 1, 2016, Mr. Burke made vague excuses and promised to get to it.  After another month passed without any payment, Mr. Smith asked again.  Mr. Burke did not respond to that request or requests that Mr. Smith made in August and September 2016.  In fact, in mid-July 2016, Mr. Burke stopped talking to Mr. Smith at all.

17.      On September 12, 2016, Mr. Smith asked Mr. Burke again to resolve the issues on his pay and to explain why Mr. Burke had stopped talking to him altogether.  Mr. Burke did not respond to the message.  Instead, less than three weeks later, he fired Mr. Smith by email on a

Friday afternoon, informing him that his employment at Rubicon would terminate 13 minutes later. Mr. Burke informed Mr. Smith the lock on his office and the password to his email had been changed and that he could retrieve his personal belongings the following Monday. Mr. Burke gave no explanation for the firing.

18. After the firing, Mr. Smith continued to try to get his unpaid compensation from Rubicon by making telephone calls and emails to Mr. Burke. Mr. Burke did not respond to phone messages, and ignored his requests made by email. Rubicon made no payments to Mr. Smith.

19. Rubicon also launched a campaign to interfere with Mr. Smith's efforts to retain his old clients and obtain new ones. First, Rubicon gave Mr. Smith less than fifteen minutes notice about the end of his employment, changed the locks on his office, and denied him access to his office and files except in the company of an office manager. Second, Rubicon denied Mr. Smith immediate access to the files necessary to continue to represent his clients, and continues to this day to deny him access to certain files and commissions relevant to his representation of his clients. In response to Mr. Smith's request for access, Rubicon has delayed responses, made no response at all, or erected other barriers to access.

20. Rubicon also took misleading steps to suggest to the public that Mr. Smith remained an employee at Rubicon. Although Rubicon denied Mr. Smith access to his email address at Rubicon, Rubicon left the email address active. It failed to inform clients that Mr. Smith no longer worked at Rubicon, and did not add any automatic reply to emails that showed he had left. Rubicon offered no forwarding or contact information for Mr. Smith so that current clients could reach him. Rubicon left Mr. Smith's name on its website, describing him at least through November 22, 2016—8 weeks after he had been fired—as a member of "our team"

and listing an extensive biography for him on the website, including references to his current clients.   Rubicon removed his name from the website only after receiving a letter from Mr. Smith's counsel informing Rubicon that it was misleading to list him as a current employee.

## COUNT I: VIOLATION OF THE WAGE ACT (UNPAID COMPENSATION)

21.     Paragraphs 1 through 20 of this Complaint are re-alleged and incorporated here by reference as though set forth in full.

22.     During 2015 and 2016, Mr. Smith was an employee of Rubicon, and Rubicon was his employer under the Wage Act.

23.     In 2014, Rubicon failed to pay any retirement benefits to or on behalf of Mr. Smith.  Retirement benefits are "other remuneration" under the Wage Act.

24.     In 2015, Rubicon failed to pay Mr. Smith the additional compensation he was owed, and failed to pay any retirement benefits to or on his behalf.

25.     In 2016, Rubicon failed to pay Mr. Smith the additional compensation he was owed, and failed to pay any retirement benefits to or on his behalf.

26.     Rubicon was required to pay Mr. Smith all wages, as defined under the Wage Act, due him no later than October 5, 2016, and Rubicon has failed to pay him then or since that time.

## COUNT II: VIOLATION OF THE WAGE ACT (RETALIATION)

27.     Paragraphs 1 through 26 of this Complaint are re-alleged and incorporated here by reference as though set forth in full.

28.      During 2016, Mr. Smith tried to get Mr. Burke to pay him the compensation owed for 2015.  Mr. Burke ignored some of these requests and offered flimsy or vague excuses

for Rubicon's failure to make the payments. At one point, Mr. Burke promised that Rubicon would pay $75,000 toward the amount owed—but then Rubicon never paid it.

29.     During 2016, Mr. Smith also tried to get Mr. Burke to have Rubicon make the payments of retirement benefits that Rubicon owed.  Mr. Burke also delayed responses on those requests.  In May 2016, Mr. Burke said that Rubicon would pay the retirement benefits and asked for account details for the transmission for the information.  Despite Mr. Smith's requests, Rubicon never paid the retirement benefits for 2014, 2015, or 2016.

30.     In August 2016, Mr. Smith asked Mr. Burke again to discuss his requests for payment of the additional compensation, Mr. Burke did not respond to the request.  On September 12, 2016, Mr. Smith asked Mr. Burke again to respond to his request to be paid.  Mr. Burke responded by firing Mr. Smith on September 30, 2016.

31.     Rubicon's firing of Mr. Smith on September 30 was in retaliation for his having complained to Mr. Burke about Rubicon's failure to pay him the wages and retirement benefits due him.  This kind of retaliation is prohibited under D.C. Code 32-1311.

**COUNT III: BREACH OF CONTRACT**

32.     Paragraphs 1 through 31 of this Complaint are re-alleged and incorporated here by reference as though set forth in full.

33.     Rubicon and Mr. Smith entered into an agreement under which he would be paid for his work as a lobbyist at Rubicon.

34.      In 2011, Mr. Burke agreed that Rubicon would pay Mr. Smith a base salary, retirement benefits, and additional compensation every year that depended on clients he had brought to the firm.

35.     Between 2011 and September 2016, Mr. Smith fully performed his obligations as an employee of Rubicon.  In addition to performing his regular duties, he brought or helped to bring additional clients to Rubicon.

36.     Rubicon paid Mr. Smith his base salary every year from 2011 to September 2016.

37.     Rubicon paid Mr. Smith additional compensation for 2011, 2012, 2013 and 2014, but did not pay Mr. Smith any additional compensation for 2015 and 2016.  Based on the revenue produced from Clients A and B in 2015, Rubicon was obligated under the contract to pay $90,000 to Mr. Smith by year-end.  Rubicon refused in 2016 to pay Mr. Smith the additional compensation from 2015 and also refused to pay the additional compensation it owed for revenue derived from Client A in 2016.  Based on that revenue, Rubicon owed Mr. Smith $45,000 for 2016.

38.     Rubicon's failure to pay Mr. Smith the additional compensation was a breach of the contract between Mr. Smith and Rubicon.

39.     Rubicon failed to pay Mr. Smith retirement benefits in 2014, 2015 and 2016.  Rubicon should have paid Mr. Smith retirement benefits of at least $25,000 for each of those years.  Rubicon's failure to pay retirement benefits was also a breach of contract.

40.     Mr. Smith has suffered damages of at least $210,000 as a result of Rubicon's breach of his contract.

### COUNT IV: UNJUST ENRICHMENT

41.     Paragraphs 1 through 40 of this Complaint are re-alleged and incorporated here by reference as though set forth in full.

42.     By failing to pay Mr. Smith what it owed him, Rubicon was unjustly enriched by the amount of owed but unpaid compensation.

43.     Rubicon has retained the money owed to Mr. Smith despite Mr. Smith's request for repayment.  On information and belief, the unpaid compensation was paid to other employees of Rubicon or was retained by Rubicon.

44.     Rubicon should pay Mr. Smith the money owed him, as it would be inequitable to allow it to keep the money when Mr. Smith provided all requested services but was not compensated in the manner that Rubicon promised to pay him.

45.     It would be unjust and inequitable for Rubicon to retain the owed compensation under these circumstances, especially as Rubicon has taken other steps to damage Mr. Smith since he was fired.

**COUNT V: INTERFERENCE WITH PROSPECTIVE BUSINESS OPPORTUNITIES**

46.     Paragraphs 1 through 45 of this Complaint are re-alleged and incorporated here by reference as though set forth in full.

47.     Rubicon has continued to interfere with Ms. Smith's efforts to serve clients whom he served at Rubicon.  Rubicon did not provide forwarding or contact information for Mr. Smith after firing him; Rubicon did not shut off Mr. Smith's email at Rubicon.  Rubicon also listed Mr. Smith as continuing to work at Rubicon for at least 8 weeks after it fired him.

48.     Rubicon was aware that Mr. Smith represented certain clients while he worked at Rubicon, and was aware that the clients intended to transfer their work to Mr. Smith after Rubicon fired him.  Rubicon intentionally interfered with Mr. Smith's prospective work for those

clients by refusing to provide the files and documents that would have been helpful to his repre-

sentation of them.

49.     Rubicon has denied and continues to deny Mr. Smith access to files and docu-

ments that would be helpful to him in representing the clients whom he represented at Rubicon.

Rubicon's continuing denial of access to the files has made it more difficult and costly for

Mr. Smith to continue to represent those clients who have chosen to continue with Mr. Smith as

their representative.  Rubicon has refused to make the files available to Mr. Smith even after the

client has directed that the files be transferred to him.

50.     Rubicon's failure to transfer the files to Mr. Smith is wrongful and is motivated by

a further effort to retaliate against Mr. Smith and to prevent him from serving in the future clients

whom he had served at Rubicon.

51.     Mr. Smith seeks a court order requiring the immediate transmittal of all client files

to him, and damages for the delay in the transmittal.

## PRAYER FOR RELIEF

1.     WHEREFORE, by reason of the forgoing, Plaintiff respectfully requests that

judgment be entered in its favor against Defendant as follows:

      a.     Monetary and/or compensatory damages to the extent allowed by law, of

           not less than $210,000;

      b.     Trebling of the damages under the Wage Act;

      c.     Reasonable attorneys' fees, expenses, and costs;

      d.      An order requiring Rubicon to provide immediately to Mr. Smith any and

           all files and documents related to every client who he continues to serve;

  e.  Such other and further relief as the Court deems just and proper; and

  f.  All other relief to which Plaintiff shows it is entitled at law or in equity.

## DEMAND FOR JURY TRIAL

 2.  Plaintiff demands a trial by jury in this action of all issues so triable.

Dated: January 6, 2017     By: /s/ Alan D. Strasser_____
   Washington, D.C.      Alan D. Strasser
              Bar No. 12382

              ROBBINS, RUSSELL, ENGLERT, ORSECK,
                UNTEREINER & SAUBER LLP
              1801 K Street, N.W., Suite 411L
              Washington, D.C. 20006
              P: (202) 775-4500
              F: (202) 775-4510
              Email: astrasser@robbinsrussell.com

              *Counsel for Plaintiff*