# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TODD W. SMITH, | : | |
| | : | |
| Plaintiff & Counter-Defendant, | : | Civil Action No.:  17-0030 (RC) |
| | : | |
| v. | : | Re Document No.:  5 |
| | : | |
| RUBICON ADVISORS, LLC, | : | |
| | : | |
| Defendant & Counter-Claimant. | : | |

## MEMORANDUM OPINION

### DENYING DEFENDANT'S PARTIAL MOTION TO DISMISS

## I. INTRODUCTION

Plaintiff Todd W. Smith formerly worked as a lobbyist for Defendant Rubicon Advisors, LLC. Mr. Smith seeks damages from Rubicon on a variety of theories. Rubicon's partial motion to dismiss challenges Mr. Smith's claims for unjust enrichment and interference with prospective business opportunities.[1] Because Mr. Smith has stated a claim on both theories, the Court denies the motion.

---

[1] Although Rubicon does not challenge this Court's subject-matter jurisdiction, the Court must independently verify that it has subject-matter jurisdiction. *See, e.g.*, *Delta Air Lines, Inc. v. Exp.-Imp. Bank of United States*, 85 F. Supp. 3d 250, 259 (D.D.C. 2015) ("[E]very federal court has a special obligation to satisfy itself of its own jurisdiction before addressing the merits of any dispute." (quoting *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1362 (D.C. Cir. 2012))).

In this case, subject-matter jurisdiction appears to be based on diversity jurisdiction. Diversity jurisdiction requires complete diversity, or in this case, that the plaintiff and defendant cannot be citizens of the same state. *See, e.g.*, *Saadeh v. Farouki*, 107 F.3d 52, 54–55 (D.C. Cir. 1997) (holding that *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806) and 28 U.S.C. § 1332 require "complete diversity," because "[f]ederal diversity jurisdiction is lacking if there are any litigants from the same state on opposing sides" (citation omitted)).

Plaintiff is a natural person residing in Virginia and thus has Virginia citizenship. Compl. ¶ 2, ECF No. 1; *Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1016 (2016). An LLC, such as Rubicon, takes the citizenship of each of its members. *See, e.g.*, *Lopes v. JetsetDC, LLC*, 994 F. Supp. 2d 135, 143 (D.D.C. 2014) ("28 U.S.C. § 1332 does not specify the

## II. BACKGROUND[2]

Mr. Smith worked as a lobbyist for Rubicon from 2011 until he was fired in 2016. Compl. ¶¶ 6–18, ECF No. 1. Rubicon is a lobbying firm with its principal place of business in Washington, D.C. Compl. ¶ 3. According to Mr. Smith, his employment agreement bound Rubicon to pay him "a base salary, plus health benefits and a retirement contribution of between $15,000 and $25,000 each year." Compl. ¶¶ 1, 7, 8, 41–45. In addition, Mr. Smith asserts that the agreement entitled him to "additional compensation calculated at 50% of revenue for business [Rubicon and Mr. Smith] pitch together and 70% of revenue for business [Mr. Smith] bring[s] in without [Rubicon's] assistance." Compl. ¶ 7 (internal quotation mark omitted). Only the retirement compensation and "additional compensation" are at issue in this lawsuit.[3]

---

citizenship status for noncorporate legal persons. The Supreme Court 'has long maintained a bright-line rule limiting corporate citizenship to corporations.' Non-corporate entities 'are analogized to partnerships, which carry the citizenship of their members.' . . . As an LLC, 'diversity jurisdiction in a suit by or against the entity depends on the citizenship of all the members.'" (quoting *C.T. Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990))); *id.* ("The District of Columbia and 'every court that has addressed the citizenship status of LLCs has held unequivocally that LLCs do not enjoy corporate citizenship.'" (quoting *Johnson-Brown v. 2200 M St. LLC*, 257 F. Supp. 2d 175, 180 (D.D.C. 2003))).

Because an LLC shares the citizenship of each of its members, Mr. Smith's allegation that Rubicon's principal place of business is located in D.C., Compl. ¶ 3, does not address the crucial issue. Neither party addresses the citizenship of Rubicon's members. The Court will therefore order supplemental briefing by the parties on subject-matter jurisdiction, as discussed in the accompanying order.

[2] When considering a motion to dismiss for failure to state a claim, a court "accepts the allegations of the complaint as true." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

[3] Although Mr. Smith's complaint does not mention receiving his base salary or health benefits during several of the years at issue, he does not affirmatively claim that he was wrongfully deprived of this compensation or seek relief for his base salary or health benefits. *See generally* Compl. ¶¶ 7–13. The Court thus concludes that Mr. Smith seeks compensation only for the allegedly missing retirement compensation and additional compensation.

As to the retirement compensation, Mr. Smith claims that Rubicon failed to pay him "retirement benefits for 2014, 2015, or 2016." Compl. ¶¶ 1, 13, 39. As to the additional compensation, Mr. Smith asserts that he helped recruit two clients to Rubicon in 2013. Compl. ¶ 9; Mem. Opp'n Def.'s Mot. Dismiss (Pl.'s Opp'n) at 2, ECF No. 8; Def's Reply at 5–6, ECF No. 10. According to Mr. Smith, both clients were pitched collaboratively with Rubicon and Mr. Smith was therefore entitled to additional compensation in the amount of 50% of the revenue from both. Compl. ¶ 9. Both remained clients for several years, and Mr. Smith was initially satisfied with the compensation he received. Compl. ¶¶ 9–10. However, in 2015 Mr. Smith claims that he was not paid the $90,000 in additional compensation that he should have received based on the $60,000 and $120,000 in revenue brought in by the two clients. Compl. ¶ 11. Again, in 2016 Mr. Smith asserts that he was not paid the $45,000 in additional compensation which should have flowed to him based on the $90,000 that one of the clients paid Rubicon. Compl. ¶¶ 12–13. Mr. Smith claims that he asked to be paid these amounts, but was rebuffed.[4] Compl. ¶¶ 14–18.

Mr. Smith's worsening employment situation came to a head in 2016 when he received an email giving him "13 minutes" of notice that he was being fired. Compl. ¶ 17. After receiving the email, Mr. Smith claims that he was denied access to his email account and office, except for a brief visit with an office manager, and that he continues to be denied access to "files and commissions relevant to his representation of his clients." Compl. ¶ 19. He also asserts that Rubicon misleadingly left Mr. Smith's biography on their website for at least eight weeks and did not provide his updated contact information to clients. Compl. ¶ 20.

---

[4] Mr. Smith also claims that, during 2016, he was offered $75,000 instead of the larger amount that he was owed, but that the $75,000 was also never paid. Compl. ¶¶ 15–16, 28.

3

Based on these events, Mr. Smith seeks relief on five theories. After answering the complaint and asserting counterclaims, *see generally* Partial Answer, Affirmative Defenses Countercl.'s (Answer), ECF No. 4, Rubicon brought the instant motion to dismiss Mr. Smith's claims for unjust enrichment (Count IV) and interference with prospective business opportunities (Count V)[5] under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Mem. Supp. Def.'s Mot. Partially Dismiss Pl.'s Compl. (Def.'s MTD), ECF No. 5-1. Because the Court finds that Mr. Smith has properly stated a claim for both unjust enrichment and interference with prospective business opportunities, the Court denies Rubicon's motion.

## III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests only whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800 (1982). Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal,* 556 U.S. at 678. A

---

[5] Mr. Smith also alleged that (1) Rubicon violated the Wage Act by denying him compensation; (2) Rubicon retaliated against him in violation of the Wage Act; and (3) Rubicon breached the employment contract. *See generally* Compl. These counts are not at issue in the instant partial motion to dismiss.

4

court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations, *see Twombly,* 550 U.S. at 555.

### IV. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Rubicon moves to dismiss Mr. Smith's claims of unjust enrichment and interference with prospective business opportunities.[6] The Court considers each in turn.

#### A. Unjust Enrichment

Rubicon argues that Mr. Smith cannot claim unjust enrichment while simultaneously "rel[ying] on the existence of the specific contract payment terms" for his breach of contract claims.[7] Def.'s Reply at 2, *see also* Def.'s MTD at 4. The Court agrees with Mr. Smith that he may advance unjust enrichment as an alternative theory of recovery at this stage of the litigation, especially because Rubicon hints that it does not interpret the employment contract in the same way as Mr. Smith.

---

[6] Rubicon also initially moved to dismiss some Mr. Smith's claims for additional compensation under Federal Rule of Civil Procedure 8 because, by omitting to name the specific clients, he had "not provided sufficient detail to put Defendant on notice of the claims being brought." Def.'s MTD at 6, ECF No. 5-1. Rubicon has subsequently stipulated that this argument is moot because Mr. Smith named the clients. Def.'s Reply at 1, ECF No. 10. The Court therefore denies Rubicon's motion to the extent it seeks dismissal based on Rule 8.

[7] The Court also rejects Rubicon's argument that "Plaintiff's claims are based exclusively on the existence of a contract between Plaintiff and Rubicon." Def.'s MTD at 4, ECF 5-1. To the contrary, Count IV of Mr. Smith's complaint does not discuss the employment contract and claims that "it would be inequitable to allow [Rubicon] to keep the money" that it was "unjustly enriched" by withholding it from him. Compl. ¶¶ 42–44, ECF No. 1. Without plumbing the merits of these contentions, Mr. Smith has, at least, pleaded a claim for unjust enrichment without reference to the contract.

Under D.C. law,[8] "[u]njust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.,* 944 A.2d 1055, 1076 (D.C. 2008) (quoting *News World Commc'ns, Inc. v. Thompsen,* 878 A.2d 1218, 1222 (D.C. 2005)). In general, a plaintiff cannot maintain an unjust enrichment claim concerning an aspect of the parties' relationship that was governed by a contract. *See In re APA Assessment Fee Litig.*, 766 F.3d 39, 46 (D.C. Cir. 2014) ("Unjust enrichment will not lie when the parties have a contract governing an aspect of [their] relation, because a court will not displace the terms of that contract and impose some other duties not chosen by the parties." (internal quotation marks and citation omitted)).

However, a plaintiff may pursue an unjust enrichment claim as an "alternative theory of liability" even though the plaintiff "ultimately cannot recover under both a breach of contract claim and an unjust enrichment claim pertaining to the subject matter of that contract." *McWilliams Ballard, Inc. v. Broadway Mgmt. Co.*, 636 F. Supp. 2d 1, 9 n.10 (D.D.C. 2009) (collecting citations); *see also Adm'rs of the Tulane Educ. Fund v. Ipsen Pharma, S.A.S.*, 771 F. Supp. 2d 32, 41 (D.D.C. 2011) ("It is difficult to see why, if [the plaintiff's] claim is successful, it would not be adequately compensated through that contract. However, at this stage of the litigation, plaintiffs are entitled to plead an inconsistent theory and, making all inferences in their favor, they have successfully stated an unjust enrichment claim."); Fed. R. Civ. P. 8(d)(3) ("A party

---

[8] Both parties assert that D.C. law governs Mr. Smith's claims. *See, e.g.*, Def.'s MTD at 4; Pl.'s Opp'n at 6. The Court does not question this conclusion. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1495 (D.C. Cir. 1991) ("[C]ourts need not address choice of law questions *sua sponte*."); *Davis v. Grant Park Nursing Home LP*, 639 F. Supp. 2d 60, 65 (D.D.C. 2009) (explaining that, where all parties assume that D.C. law applies, "[t]he Court need not and does not question the parties' assumptions on that point").

6

may state as many separate claims or defenses it has, regardless of consistency."). Without this rule, a plaintiff could be left "without any remedy should the fact-finder determine at a later stage that there was no express agreement between the parties." *Scowcroft Grp., Inc. v. Toreador Res. Corp.*, 666 F. Supp. 2d 39, 44 (D.D.C. 2009). Here, therefore, the Court need not dismiss Mr. Smith's alternative theory of unjust enrichment as inconsistent with his breach of contract claims.

This exception is especially necessary where, as here, the defendant casts doubt on the validity of the contract.[9] *See, e.g.*, *Armenian Assembly of Am., Inc. v. Cafesjian*, 597 F. Supp. 2d 128, 135–36 (D.D.C. 2009) (holding that "dismissal of Defendants' unjust enrichment . . . counterclaims is not appropriate" because the plaintiffs continued to cast doubt on the validity of the contract by "refus[ing] to admit that the conditions of the [contract] are applicable to this suit, or even to admit what the conditions of [contract] are"); *United States ex rel. Morsell v. Symantec Corp.*, 130 F. Supp. 3d 106, 129–30 (D.D.C. 2015) (holding that "a plaintiff may advance quasi-contract claims in the alternative" in part because the defendant "argu[ed] that the Contract was not validly formed" (internal quotation marks and citations omitted)); *cf. United States v. Kellogg Brown & Root Servs., Inc.*, 800 F. Supp. 2d 143, 160–61 (D.D.C. 2011) (granting motion to dismiss unjust enrichment claim where, "throughout the extensive briefing each party

---

[9] Even if the opposing party does not seek to discredit the contract, dismissing unjust enrichment claims in conjunction with contract claims may be premature where the parties have not yet had the benefit of discovery and the Court has not yet interpreted the scope of the contract. *See, e.g.*, *In re APA Assessment Fee Litig.*, 766 F.3d 39, 46 (D.C. Cir. 2014) (holding that unjust enrichment claims should not have been dismissed after analyzing the scope of the contract and determining that the contract did not "regulate the parties' obligations in relevant part" (internal quotation marks and citations omitted)); *Dist. Title v. Warren*, No. 14-1808, 2015 WL 12964657, at *10 (D.D.C. June 1, 2015) ("Moreover, without the benefit of discovery, it is not yet clear whether the activities at issue in the unjust enrichment claim against [the] defendant [] overlap entirely with the breach of contract claim. Accordingly, under the particular circumstances presented here, the Court finds that it would be premature to dismiss the unjust enrichment claim . . . even though plaintiff will not ultimately be able to recover damages on legally inconsistent theories." (internal quotation marks and citations omitted)).

has prepared in this case, there [was] no suggestion that the . . . contract is invalid or inapplicable to the dispute at hand" and after the court found that "an express contract [was] present").

Here, while seeking the dismissal of Mr. Smith's unjust enrichment claims, Rubicon simultaneously disputes the scope and validity of the contract. In its answer, Rubicon "admits that there was an agreement between Defendant and Plaintiff at the time Plaintiff was employed under which Plaintiff would be compensated" but maintains that "such agreement is not as described by Plaintiff in the Complaint."[10] Answer ¶ 33, ECF No. 4; *see also* Answer ¶ 34 ("Defendant denies that the agreement as alleged accurately sets forth the terms of the agreement between Defendant and Plaintiff entered into in 2011."). As Mr. Smith notes, these statements "raise[] serious questions about whether [Rubicon] recognizes the same contract." Pl.'s Opp'n at 5–6.

Nor is the case Rubicon cites, *Sununu v. Philippine Airlines, Inc.*, to the contrary. 792 F. Supp. 2d 39, 57 (D.D.C. 2011). In *Sununu*, the court granted the defendant *summary judgment* on the plaintiff's unjust enrichment claims after it determined that neither rescission, mistake, nor misrepresentation invalidated the contract at issue. *Id.* at 54–57. This Court has not yet had a similar opportunity to hold on the validity or scope of the employment contract at issue here, and therefore will not dismiss Mr. Smith's unjust enrichment claims at the motion to dismiss stage.

### B. Interference with Prospective Business Opportunities

Rubicon contends that Mr. Smith fails to state a claim for interference with prospective business opportunities[11] for two reasons—first, because he "has not alleged the existence of a

---

[10] In addition, as Mr. Smith notes, Rubicon refers to "notif[ying] Plaintiff," apparently unilaterally, "in March 2016, that his compensation was changed" without any reference to a contract. Answer ¶ 33, ECF No. 4; *cf.* Pl.'s Opp'n at 5–6.

[11] This tort is also referred to as "tortious interference with economic advantage." *Kimmel v. Gallaudet Univ.*, 639 F. Supp. 2d 34, 45 (D.D.C. 2009).

8

business expectancy" and, second, because Mr. Smith did not allege "that he lost any future contracts or clients due to Rubicon's actions." Def.'s MTD at 5. Neither argument has merit.

To state a claim for interference with prospective business opportunities, D.C. law requires a plaintiff to plead: "(1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage." *Jankovic v. Int'l Crisis Grp.*, 593 F.3d 22, 29 (D.C. Cir. 2010) (quoting *Bennett Enters. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995)).

First, Mr. Smith has alleged that he had a "business expectancy" and that Rubicon had "knowledge of" that business expectancy. The complaint states: "Rubicon . . . was aware that the clients intended to transfer their work to Mr. Smith after Rubicon fired him." Compl. ¶ 48. This is contrary to Rubicon's assertion that "[Mr. Smith] has failed to allege that he had a valid business relationship in his own right with [the clients] *independent of his employment*" with Rubicon. Def's Reply at 4 (emphasis added). Mr. Smith has explicitly alleged that the clients intended to transfer their work from Rubicon to Mr. Smith, and thus that he expected to begin a separate relationship with the clients. Furthermore, Rubicon offers no legal authority for its reading of such an "independence" requirement.

Second, Mr. Smith alleges both "interference" and "damage" caused by Rubicon in his Complaint, stating "Rubicon's continuing denial of access to the files has made it more difficult and costly for Mr. Smith to continue to represent those clients." Compl. ¶ 49. Rubicon contends that a plaintiff must show complete loss of a contract or business expectancy, and faults Mr. Smith's claim because it does not allege "that he lost any future contracts or clients due to Rubicon's actions." Def.'s MTD at 5. However, Rubicon does not identify any legal authority for

9

the proposition that *harm* to business expectancies is not cognizable. To the contrary, it appears that harm to a business relationship may be cognizable as interference with prospective business relationships. *See generally Solers, Inc. v. Doe*, 977 A.2d 941 (D.C. 2009) (holding that it was error to dismiss a claim for interference with prospective business relationships when the plaintiff pleaded general harm to its reputation and "damage" to its prospective business opportunities).

The tort of interference with an existing contract shares many of the elements of interference with a business expectancy. *See, e.g.*, *Kaempfer v. Brown*, 109 B.R. 527, 532 (D.D.C. 1990) ("The elements of the tort of intentional interference with business expectancies run parallel to that of interference with existing contracts." (citations omitted)), *aff'd sub nom. B & W Mgmt., Inc. v. Brown*, 925 F.2d 487 (D.C. Cir. 1991) (unpublished table decision); *Casco Marina Dev., L.L.C. v. D.C. Redevelopment Land Agency*, 834 A.2d 77, 84 (D.C. 2003) ("The elements of tortious interference with prospective business advantage mirror those of interference with contract." (citing *Brown v. Carr*, 503 A.2d 1241, 1247 (D.C. 1986))). In cases dealing with tortious interference with established contracts, damage to the contracting party has been held to be sufficient even without the total destruction of the contract.[12] *See, e.g.*, *Park v. Hyatt Corp.*, 436 F. Supp. 2d 60, 64 (D.D.C. 2006) (finding that plaintiff who pleaded damages from "lost profits and loss of reputation" had sufficiently stated a claim for tortious interference with contract). Furthermore, "[t]he District of Columbia follows the Restatement with respect to tortious interference claims." *Bowhead Info. Tech. Servs., LLC. v. Catapult Tech. Ltd.*, 377 F. Supp. 2d 166, 175 (D.D.C. 2005) (collecting cases). And the Restatement states the elements of tortious interference with an existing contract as including interference that "prevent[s] the other

---

[12] Rubicon argues that Mr. Smith relies on cases discussing tortious interference with a contract instead of tortious interference with a prospective business opportunity. Def.'s Reply at 5 n.3. However, as discussed above, the elements of these torts are parallel in D.C.

from performing the contract or caus[es] his performance to be more expensive or burdensome."
Restatement (Second) of Torts § 766A (1979).

The Court therefore concludes that Mr. Smith need not plead complete destruction of a business expectancy in order to plead a claim for interference with a business expectancy. At this stage of the proceedings, Mr. Smith need not precisely establish the amount of damages he allegedly suffered. Because Mr. Smith has adequately pleaded all necessary elements, the Court therefore denies Rubicon's motion to dismiss.[13]

## V.  CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss (ECF No. 5) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 1, 2017                                                         RUDOLPH CONTRERAS
                                                                             United States District Judge

---

[13] Rubicon adds in its reply an argument that Mr. Smith does not meet the requirement of showing *tortious* interference. *See* Def.'s Reply at 3–5. However, although that argument may have some merit, the Court must disregard this argument as it was not raised prior to Rubicon's reply. *See Performance Contracting, Inc. v. Rapid Response Constr., Inc.*, 267 F.R.D. 422, 425 (D.D.C. 2010) ("As a general matter, it is improper for a party to raise new arguments in a reply brief because it deprives the opposing party of an opportunity to respond to them, and courts may disregard any such arguments." (citing *Aleutian Pribilof Islands Ass'n v. Kempthorne*, 537 F. Supp. 2d 1, 12 n.5 (D.D.C. 2008)).